[Cite as *State v. Williams*, 2024-Ohio-1707.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-29 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 185 |
| | : | |
| ROBERT ANDREW WILLIAMS | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 3, 2024

. . . . . . . . . . .

JON PAUL RION, Attorney for Appellant

JANE A. NAPIER, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Defendant-Appellant Robert Andrew Williams appeals from his conviction in the Champaign County Court of Common Pleas after he pleaded guilty to two counts of burglary and single counts of felonious assault, aggravated robbery, violating a protection order, and grand theft of a motor vehicle. He was sentenced to a term of 72 months plus 27 to 32½ years in prison. For the reasons that follow, the judgment of the trial court will

be affirmed.

### I.      Facts and Procedural History

{¶ 2} On the morning of August 18, 2022, deputies were dispatched to an address on Crowl Road in Harrison Township, Champaign County, on a domestic violence call. When deputies arrived on the street, they spotted two females in the yard a few houses down screaming "Help Me!" The older female had blood covering her face and hair, a large gash on her forehead, and both of her eyes were nearly swollen shut. The younger female had marks on her arms and legs, and her hand was swollen and bleeding.

{¶ 3} The older woman, S., stated that her estranged husband, Williams, had entered her residence through the back door, located her, and beaten her with a metal pipe. The other female, a juvenile, told deputies that she had been asleep in her bedroom and woke up to the commotion. She went to the living room to find Williams attacking S., who was her father's girlfriend. The girl retreated to her room to call 911, but Williams found her and attacked her with the pipe too, causing injury to her hand and arm. Williams then fled the scene, hid in a cornfield until the first responders left, broke into another house, and stole a truck.

{¶ 4} Later that day, law enforcement got a call from Alex Williams, Williams's son. Alex explained that his father had told him that he went to S.'s house, they argued, and then he beat her. Alex informed deputies that he thought Williams would flee to Arizona, where Williams's father lived. Alex called back later to inform deputies that Williams had stopped in Englewood to see his sister and his dog and that Williams had taken S.'s phone and sent himself $500 via Zelle.

{¶ 5} Eventually, Williams and the stolen truck were located in Darke County; after a pursuit, he was taken into custody.

{¶ 6} Meanwhile, both S. and the juvenile victim, R.J., were taken to the hospital for their injuries. R.J. had a fractured right hand and needed surgery to insert two pins to help with healing. S.'s injuries were so severe that she was flown by helicopter to the hospital. She spent six days in the intensive care unit with skull fractures, a broken jaw, brain bleeds, and a ruptured eardrum.

{¶ 7} On August 29, 2022, Williams was indicted on 14 counts: (1) aggravated burglary; (2) attempted murder; (3) felonious assault; (4) felonious assault; (5) felonious assault; (6) felonious assault; (7) aggravated robbery; (8) disrupting public service; (9) menacing by stalking; (10) violating a protection order; (11) receiving stolen property; (12) burglary; (13) grand theft of a motor vehicle; and (14) failure to comply with an order or signal of a police officer.

{¶ 8} On October 12, 2022, Williams entered a plea agreement. In exchange for pleading guilty to two counts of burglary (one count was amended from aggravated burglary, and the other was amended from a second-degree to a third-degree felony) and single counts of felonious assault, aggravated robbery, violating a protection order, and grand theft of a motor vehicle, the State agreed to dismiss the remaining counts.

{¶ 9} At the sentencing hearing, the court heard from both attorneys and the victims, who spoke about the crimes and their impact; the court also heard from Williams, who, in a long colloquy with the court, recounted his struggle with mental health after he served in the military in the Middle East. The court also considered written victim

impact statements, the presentence investigation report (PSI), which included pictures of the victims' injuries, and Williams's military service record.

**{¶ 10}** The trial court imposed the following sentences: Count 1 (burglary): 8 to 12 years; Count 4 (felonious assault): 8 to 12 years; Count 7 (aggravated robbery): 11 to 16½ years; Count 10 (violating a protection order): 36 months; Count 12 (burglary): 36 months; Count 13 (grand theft of a motor vehicle): 15 months. The sentences for Counts 1, 4, 7, and 10 were ordered to be served consecutively, and the sentences for Counts 12 and 13 were to be served concurrently to each other but consecutively to the sentences imposed in Counts 1, 4, 7, and 10. In total, Williams was ordered to serve 72 months plus 27 to 32½ years in prison.

**{¶ 11}** Williams has appealed, raising a single assignment of error.

**II.     Consecutive Sentences**

**{¶ 12}** In his assignment of error, Williams contends that the trial court erred by "imposing maximum consecutive sentences that are not clearly and convincingly supported by the record." Appellant's Brief at 8.

**{¶ 13}** In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 16, 23 ("judicial fact-finding is once again required to overcome the statutory presumption in favor of concurrent sentences"). However, after determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. *State v. Dillon*, 2d Dist. Greene No. 2020-CA-4, 2020-Ohio-5031, ¶ 44.

{¶ 14} R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 15} Initially, Williams argues that the 8-to-12-year sentence he received for Count 1 was disproportionate to the 36-month sentence imposed on Count 12. This discrepancy is easily explained. The burglary charge in Count 1 was a second-degree felony with a maximum minimum term of 8 years. Count 12, on the other hand, was a third-degree felony with a maximum term of 36 months. The difference in conduct was

also significant. The purpose of the trespass of Count 1 was assault in violation of R.C. 2903.13. The purpose of the trespass in Count 12 was theft. It makes sense that a crime of violence would merit a longer sentence than a property crime.

{¶ 16} Williams then avers that it has been this Court's precedent that "consecutive sentence findings that result in lengthy prison sentences are reserved for the 'worst of the worst.' " While it is true that we have affirmed consecutive sentences in cases with troubling fact patterns, including those cited by Williams (*see State v. Terry*, 2d Dist. Clark No. 2016-CA-65, 2017-Ohio-7266; *State v. Beverly*, 2d Dist. Clark No. 2015-CA-71, 2018-Ohio-2116; *State v. Delong*, 2d Dist. Clark No. 2021-CA-32 & 33, 2022-Ohio-207), there is little doubt that his conduct reached the level of "worst of the worst."

{¶ 17} According to the record, Williams stalked S. and then, when he found out where she was living (he called her work to try to obtain the address), he arrived early in the morning, parked his truck (which he had outfitted with a stolen license plate) a distance away, and then waited for S.'s boyfriend to leave for work; he then broke into the house and beat S. with a metal pipe. He also targeted a 15-year-old girl who was asleep in another room when she woke up from the commotion and tried to call for help. Both victims were hospitalized, S. with life-threatening injuries. As Williams fled, he broke into another house, stole a truck, and led officers on a pursuit. The facts of this case could reasonably be characterized as a "worst of the worst" situation.

{¶ 18} Williams also claims that the consecutive sentence findings were unsupported by the record.

{¶ 19} "The plain language of R.C. 2953.08(G)(2) requires an appellate court to

defer to the trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, Ohio Slip Opinion No. 2023-Ohio-3851, __ N.E.3d __, ¶ 5. *See also State v. Norris*, 2d Dist. Greene No. 2023-CA-8, 2023-Ohio-4057, ¶ 13 (an appellate court cannot reverse consecutive sentences unless it clearly and convincingly finds the record does not support the trial court's findings).

{¶ 20} At the sentencing hearing and in the judgment entry, the trial court found that consecutive sentences were necessary to protect the public from future crime or to punish Williams. It further found that consecutive sentences were not disproportionate to the seriousness of the conduct and the danger Williams posed to the public. It went on to note that two or more of the offenses were committed as part of a course of conduct and that the harm caused was so great or unusual that no single prison term adequately reflected the seriousness of the conduct. Finally, the court concluded that Williams's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime.

{¶ 21} Williams does not dispute that the court made the requisite findings but instead attacks the validity of those findings. His argument depends on this Court's doing a de novo review of the record, something the legislature and Ohio Supreme Court have clearly stated we cannot do. *See* R.C. 2953.08(G)(2); *Gwynne* at ¶ 5. All we are given the authority to do is to make sure there was *something* in the record that supported the trial court's findings. As long as the findings were not clearly and convincingly unsupported, we must affirm.

{¶ 22} The record includes the PSI, which contained details of this horrific crime spree and images showing the extensive injuries to the victims; it also identifies efforts made by Williams to prevent detection. There was also evidence of his criminal history, which dated back to 1994 and featured multiple instances of crimes of violence, including a felony battery conviction from Florida. Willams had six convictions not counting this case, a still-pending telephone harassment charge out of Clark County, and an open failure to appear case from Huber Heights. There had been multiple dismissed charges. The PSI also included details of Williams's family history, mental health diagnoses, military service, and history of drug use. Finally, there were victim impact statements which described the physical and emotional toll the attacks had taken on S. and R.J.

{¶ 23} Based on the record before us, we cannot say that the court's findings were clearly and convincingly not supported by the record. Williams's assignment of error is overruled.

### III.    Conclusion

{¶ 24} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.