[Cite as *State v. Hill*, 2024-Ohio-3330.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                          :

    Appellee                           :      C.A. No. 30048

v.                                     :      Trial Court Case No. 2023 CR 1573

ANGELINA HILL                          :      (Criminal Appeal from Common Pleas
                                       :      Court)
    Appellant                          :
                                       :

. . . . . . . . . . .

O P I N I O N

Rendered on August 30, 2024

. . . . . . . . . . .

KRISTIN L. ARNOLD, Attorney for Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant Angelina Hill appeals from her conviction in the Montgomery County Court of Common Pleas on two counts of aggravated vehicular homicide. Specifically, Hill contends that the trial court erred by imposing consecutive sentences for

her offenses.   For the reasons outlined below, we disagree with Hill's argument and will affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On August 30, 2023, a Montgomery County grand jury returned an indictment charging Hill with two third-degree-felony counts of aggravated vehicular homicide and two second-degree-misdemeanor counts of vehicular homicide.   The charges arose after Hill ran a stop sign at a high rate of speed in Butler Township, Ohio, and caused a collision with another vehicle that resulted in the deaths of 73-year-old John Parrish and 71-year-old Janet Mowen.   Hill initially pled not guilty to the charges and was released on bond with electronic home monitoring.   The trial court later revoked Hill's electronic home monitoring and placed Hill in jail after she violated the terms of her electronic home monitoring on several occasions.

{¶ 3} Following plea negotiations, Hill entered a plea agreement with the State whereby she agreed to plead guilty to two counts of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a).   In exchange for Hill's guilty pleas, the State agreed to dismiss the remaining counts in the indictment.   The trial court accepted Hill's guilty pleas and ordered a presentence investigation report ("PSI").   After considering the PSI, the purposes and principles of felony sentencing, Hill's conduct while on electronic home monitoring, medical records submitted by Hill, and statements made by Hill, defense counsel, and the victims' family members, the trial court sentenced Hill to 60 months in prison on each count of aggravated vehicular homicide and ordered those sentences to

be served consecutively. Accordingly, Hill received a total term of 120 months in prison for her offenses.

{¶ 4} Hill appeals from her conviction, raising a single assignment of error for review.

## Assignment of Error

{¶ 5} Under her sole assignment of error, Hill argues that the trial court's imposition of consecutive sentences was contrary to law and unsupported by the record. We disagree.

{¶ 6} When reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G). *State v. Jones*, 2020-Ohio-6729, ¶ 27, citing *State v. Marcum*, 2016-Ohio-1002, ¶ 21. Under that statute, an appellate court may increase, reduce, or otherwise modify a sentence, or it may vacate the sentence and remand the matter for resentencing only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain listed statutes; or (2) the sentence is otherwise contrary to law. *Marcum* at ¶ 9, citing R.C. 2953.08(G)(2).

{¶ 7} As previously discussed, Hill challenges the trial court's imposition of consecutive sentences, which is governed by R.C. 2929.14(C)(4). R.C. 2929.14(C)(4) is one of the statutes listed under R.C. 2953.08(G)(2), and it provides that a trial court may impose consecutive sentences if it finds that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger

the offender poses to the public; and (3) one or more of the following three findings is made:

(a)     The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b)     At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)     The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 8} "[A] trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 2014-Ohio-3177, syllabus. "[W]here a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does

not support the trial court's findings." *State v. Withrow*, 2016-Ohio-2884, ¶ 38 (2d Dist.). "The plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-Ohio-3851, ¶ 5, *accord State v. Williams*, 2024-Ohio-1707, ¶ 19 (2d Dist.) Therefore, "[o]ur authority is limited to detecting *something* in the record that supported the trial court's findings. As long as the findings were not clearly and convincingly unsupported, we must affirm." (Emphasis in original.) *State v. Simpson*, 2024-Ohio-2378, ¶ 36 (2d Dist.).

{¶ 9} In this case, Hill does not dispute that the trial court made the required consecutive-sentence findings at the sentencing hearing and that those findings were incorporated into the judgment entry. Indeed, the record of the sentencing hearing and the judgment entry indicate that the trial court found consecutive sentences were necessary to protect the public from future crime or to punish Hill, and that consecutive sentences were not disproportionate to the seriousness of Hill's conduct and the danger that Hill posed to the public. *See* Sentencing Tr., p. 45; Judgment Entry. In addition, the trial court found that the two offenses in this case were committed as part of one course of conduct and that the harm caused by the two offenses was so great or unusual that no single prison term for any of the offenses adequately reflected the seriousness of Hill's conduct. *Id.* Because the trial court made the required consecutive-sentence findings and incorporated them into the judgment entry, our review is limited to determining whether the record clearly and convincingly does not support the trial court's

findings.

{¶ 10} Hill argues that the record does not support the trial court's finding under R.C. 2929.14(C)(4)(b), i.e., that her two offenses were committed as part of one course of conduct and that the harm caused by those offenses was so great or unusual that no single prison term for the offenses adequately reflected the seriousness of her conduct. Hill claims that this finding was unsupported by the record because the only reason the trial court gave for making it was that "two people lost their lives very unnecessarily as a result of the actions that occurred on that day." Sentencing Tr., p. 45. Hill argues that in *State v. Hacker*, 2002 WL 1332289 (2d Dist. June 14, 2002), this court found that similar reasoning did not support the great-and-unusual-harm finding under R.C. 2929.14(C)(4)(b) (then codified as R.C. 2929.14(E)(4)(b)).

{¶ 11} In *Hacker,* the trial court imposed consecutive sentences for two counts of aggravated vehicular homicide after making consecutive-sentence findings that included a great-and-unusual-harm finding under R.C. 2929.14(C)(4)(b). *Hacker* at *2. With respect to that finding, the trial court in *Hacker* observed that the victims had suffered the worst form of harm since they died as a result of their injuries. *Id.* at *4. On appeal, this court found that the record did not support the trial court's finding under R.C. 2929.14(C)(4)(b) because the deaths of the victims were "a necessary element" of the defendant's offenses. *Id.* In other words, the court found that because aggravated vehicular homicide "necessarily involves the death of a victim," the fact that Hacker caused the death of his victims did not support finding that his aggravated vehicular homicide offenses were " 'so great or unusual' that no single prison term for either of the

offenses . . . adequately reflects the seriousness of Hacker's conduct." *Id.*

{¶ 12} When determining whether the great-and-unusual-harm finding was unsupported by the record, the court in *Hacker* did not consider facts in the record establishing that Hacker drank excessively, took pills, and passed out just a few hours before he caused the collision that led to his aggravated vehicular homicide charges. *Id.* at *1. The court also did not consider facts in the record establishing that Hacker was driving over 60 mph in a 35-mph zone when he lost control of his vehicle and collided with a parked car that contained the victims, 63-year-old Kenneth Jones and 66-year-old Glenn Wade. *Id.* Most importantly, the court did not consider facts in the record establishing that Jones and Wade had been severely injured as a result of the collision and did not die until several days later. In other words, the record indicated that the victims suffered several days before succumbing to their injuries. Instead of considering any of these facts, the court in *Hacker* focused solely on the reasoning the trial court gave for the great-and-unusual-harm finding.

{¶ 13} We note that the court in *Hacker* also found that the record did not support the trial court's finding under R.C. 2929.14(C)(4)(c) (formerly R.C. 2929.14(E)(4)(c)), i.e., that Hacker's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by him. *Hacker*, 2002 WL 1332289, at *4-5. The court reached this conclusion even though the record established that Hacker had a criminal history that included convictions for driving under the influence of alcohol and an open container violation just two years before the collision in question. *Id.* at *4. Although the court in *Hacker* recognized "that Hacker has demonstrated a propensity for

getting into trouble as a result of the consumption of alcohol," the court nevertheless determined that the record did not support the criminal-history finding and instead focused on the fact that Hacker had been seeking treatment for his alcoholism and was remorseful. *Id.* at *4-5.

{¶ 14} Upon review, we find that the court in *Hacker* correctly recognized that the clearly-and-convincingly-unsupported-by-the-record standard of review in R.C. 2953.08(G)(2) was the standard of review that applied to Hacker's consecutive sentences, *see id.* at *3, but that the court applied the standard incorrectly. We note that the standard of review in R.C. 2953.08(G)(2) has not changed in any material respect since *Hacker* was decided in 2002. *See* H.B. No. 331, 2000 Ohio Laws 222. As previously discussed, "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *Gwynne*, 2023-Ohio-3851, at ¶ 5. Therefore, "[a]ll we are given the authority to do is to make sure there was *something* in the record that supported the trial court's findings." (Emphasis in original.) *Williams*, 2024-Ohio-1707, at ¶ 21 (2d Dist.).

{¶ 15} Based on the aforementioned facts in *Hacker*, we find that there was something in the record that supported the consecutive-sentence findings at issue. However, instead of being deferential to the trial court's consecutive-sentence findings and simply reviewing the record for something that supported the findings, the court in *Hacker* focused only on the facts it found to be important and modified Hacker's sentence in a way it deemed suitable. Such a review does not comply with R.C. 2953.08(G)(2).

Accordingly, *Hacker* was not correctly decided and is hereby overruled.

{¶ 16} Having overruled *Hacker*, Hill's argument with regard to the trial court's great-and-unusual-harm finding lacks merit. The fact that the trial court observed at the sentencing hearing that the victims had died unnecessarily as a result of Hill's conduct did not mean that the trial court's great-and-unusual-harm finding was clearly and convincingly unsupported by the record. As previously discussed, a trial court is not even required to state reasons supporting its consecutive-sentence findings. *Bonnell*, 2014-Ohio-3177, at syllabus. Any reason the trial court may have given for its consecutive-sentence findings does not, by itself, determine whether those findings are clearly and convincingly unsupported by the record. Again, that determination is made by looking at the record and seeing if there is anything that fails to support the trial court's findings. We note that "the 'record' includes, among other things, any presentence or other report submitted to the trial court, the trial record in the case, and any oral or written statements made by or submitted to the trial court at the sentencing hearing." *State v. McElrath*, 2024-Ohio-2475, ¶ 10 (2d Dist.), citing R.C. 2953.08(F).

{¶ 17} In this case, the PSI indicated that, at the time of the collision, Hill was uninsured and driving 82 mph in a 50-mph zone while making outgoing calls on her cell phone. Although the PSI indicated that Hill's blood test results for alcohol were inconclusive due to an abnormality with the testing, it also indicated that a witness, who stopped and spoke with Hill after the collision, smelled alcohol on Hill's breath. The trial court also indicated at the sentencing hearing that Hill had had an alcohol monitoring device (Soberlink) while out on bond and noted that Hill had had past issues with alcohol.

**{¶ 18}** The PSI further indicated that the collision in question caused a loud explosion and resulted in Parrish and Mowen's vehicle being knocked into the air and landing in a cornfield. According to the PSI, Hill was treated at the hospital for non-life-threatening injuries while Parrish and Mowen were both pronounced dead at the scene of the collision. The statements given by Mowen's daughters at the sentencing hearing indicated that Parrish and Mowen had died violently and sustained broken necks, severed brain stems, organ damage, and internal bleeding. Mowen's oldest daughter stated that she has nightmares about the collision and that she often thinks about how violently her mother and Parrish died, the severity of their injuries, and the fear they must have felt during the collision. She also stated that she has overwhelming stress and anxiety about driving, has difficulty dealing with her grief and anger, and sobs during her lunch hour, which she used to spend with Mowen.

**{¶ 19}** Mowen's youngest daughter stated that she struggles with being angry every day and gets sick to her stomach when she thinks of the fear her mother felt during the collision. She also stated that she thinks about the collision all the time, which causes her not to sleep well. She further indicated that she has had to miss work to get her mother's property in order, meet with the prosecutor, and attend court dates. To do so, the youngest daughter stated that she drives 400 miles roundtrip even though it is a financial struggle for her. The youngest daughter further indicated that her mother and Parrish have grandchildren, great grandchildren, friends, and pets who loved them very much and enjoyed spending time with them. In addition, Parrish's sister provided a written statement to the court stating that the loss of her brother has broken her heart and

that she misses him and Mowen very much.

{¶ 20} Based on the information in the record regarding Hill's conduct at the time of the collision, the violent nature of Mowen and Parrish's deaths, and the negative effects the incident had on several of the victims' family members, we cannot say that the trial court's finding under R.C. 2929.14(C)(4)(b) was clearly and convincingly unsupported by the record. That is, we cannot say the record clearly and convincingly does not support finding that the harm caused by Hill's multiple offenses was so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of Hill's conduct.

{¶ 21} We also do not find that the record fails to support the trial court's other consecutive-sentence findings, i.e., that consecutive sentences were necessary to protect the public from future crime or to punish Hill, and that consecutive sentences were not disproportionate to the seriousness of Hill's conduct and the danger she posed to the public. Although the PSI indicated that Hill had no prior felony convictions, it also showed that she had seven out-of-state misdemeanor convictions between 2010 and 2022 for violating a protection order, domestic violence, making false/misleading statements to a public servant, attempted theft, resisting arrest, assault, and menacing. The PSI also showed that in 2013 and 2016, Hill was arrested in Nevada for domestic battery, and that Hill had a juvenile record in California for fighting when she was 13 years old.

{¶ 22} Most importantly though, at the sentencing hearing, the trial court stated that Hill had a pending failure to yield charge out of Miami County, Ohio, that was based on Hill's causing a collision by once again failing to yield at a stop sign. The trial court

stated that the Miami County collision occurred on March 7, 2023, just two months after the collision in this case. The trial court noted that Hill had failed to pay the ticket in that case and otherwise failed to appear at court. The trial court also discussed how Hill had previously failed to appear at court in this case, violated the terms of her electronic home monitoring on several occasions, made misrepresentations to the court about having cancer, and completely disregarded the court's orders for bond. The trial court stated that Hill's actions showed that the court's orders meant nothing to her and that Hill was not truly remorseful for her conduct.

{¶ 23} Based on the foregoing information and the previously discussed information pertaining to Hill's conduct during the collision, we cannot say that the record clearly and convincingly fails to support the trial court's findings that consecutive sentences were necessary to protect the public from future crime or to punish Hill or that consecutive sentences were not disproportionate to the seriousness of Hill's conduct and the danger she posed to the public. Because the trial court's consecutive-sentence findings were not clearly and convincingly unsupported by the record, there is no basis for this court to modify Hill's sentence.

{¶ 24} Hill's sole assignment of error is overruled.

## Conclusion

{¶ 25} Having overruled Hill's assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.