[Cite as *State v. Helton*, 2025-Ohio-1945.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-21 |
| | : | |
| v. | : | Trial Court Case Nos. 2023 CR 136; |
| | : | 2024 CR 126 |
| ADAM ELMER HELTON | : | |
| | : | (Criminal Appeal from Common Pleas |
| Appellant | : | Court) |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on May 30, 2025

· · · · · · · · · · ·

JENNIFER E. MARIETTA, Attorney for Appellant

JANE A. NAPIER, Attorney for Appellee

· · · · · · · · · · · ·

LEWIS, J.

{¶ 1} Defendant-appellant Adam Elmer Helton appeals from judgments of the Champaign County Common Pleas Court imposing a 7-month prison term following revocation of his community control sanctions in Champaign C.P. No. 2023 CR 136 and sentencing Helton to a consecutive 12-month prison term following his guilty pleas in Champaign C.P. No. 2024 CR 126.   For the following reasons, the judgments of the trial

court will be affirmed.

### I. Procedural History

{¶ 2} On July 10, 2023, Helton was indicted by a Champaign County grand jury in Case No. 2023 CR 136 on two counts of aggravated possession of drugs, in violation of R.C. 2925.11(A), felonies of the fifth degree. On August 15, 2023, pursuant to a negotiated plea agreement, Helton pleaded guilty to one count of aggravated possession of drugs in exchange for the State's dismissal of the second count and recommendation of community control sanctions. Both parties waived a presentence investigation report, and the trial court proceeded immediately to sentencing. The trial court sentenced Helton to community control sanctions for two years. In addition to ordering Helton to comply with the Champaign County standard conditions of community control, the trial court ordered him to comply with additional special conditions of community control. Some of those special conditions included that Helton was not to purchase, receive, possess, ingest, inject, or consume illegal controlled substances, to obtain an assessment from and successfully complete any programming ordered by the West Central Justice Reinvestment Grant Program, and to have no contact with several individuals, including Erica Thompson and Barbann Blackburn, Helton's fiancée, with the exception of telephone and social media contact with Blackburn. The trial court advised Helton that if he violated his community control sanctions, it could impose a longer time under the same sanctions not to exceed a total of five years, a more restrictive sanction, or a prison term. Helton was informed that for a violation of community control, he could be sentenced 6-12 months in prison and the court could impose concurrent or consecutive

sentences. Helton was given 11 days of jail-time credit. Helton was not ordered to pay any fines, restitution, or court costs. By agreement of the parties, the court ordered a forfeiture of certain property to the North Lewisburg Police. Helton did not file a direct appeal.

{¶ 3} On April 11, 2024, a capias was issued for Helton's arrest because his whereabouts were unknown. On September 12, 2024, Helton was arrested on the capias.

{¶ 4} A notice of violations of Helton's community control sanctions in Case No. 2023 CR 136 was filed on September 23, 2024. The notice alleged the following four separate violations:

1) Standard Condition #2: "I will follow all orders given to me by my supervising officer or other authorized representatives of the Court or the Department of Rehabilitation and Correction."

   a. On or about March 5, 2024, Helton failed to report to the office as ordered by his supervising officer.

   b. On or about March 14, 2024, Helton failed to report to the office as ordered by his supervising officer.

2) Standard Condition #9: "I will not purchase, possess, use or have under my control any narcotic drug or other controlled substance or illegal drugs, including any instrument, device or other object used to administer drugs or to prepare them for administration, unless it is lawfully prescribed for me by a licensed physician. I agree to inform my

supervising officer promptly of any such prescription and I agree to submit to drug testing if required by the Adult Parole Authority."

    a. On or about September 13, 2024, Helton admitted to using marijuana in and around Champaign County,

    b. On or about September 13, 2024, Helton admitted to using methamphetamine in and around Champaign County, and

    c. On or about September 13, 2024, Helton admitted to using amphetamine in and around Champaign County.

3) Special Condition: "Defendant shall obtain an assessment from and successfully complete any programming ordered by the West Central Justice Reinvestment Grant Program."

    a. On March 12, 2024, Helton was unsuccessfully discharged from the program.

4) Special Condition: "Defendant may not have contact with or be in the presence of Barbann Blackburn . . . and Erica Thompson. Defendant is authorized to have telephone or social media contact with Barbann Blackburn."

    a. On September 12, 2024, Helton was arrested at a residential structure where he admitted to residing with Blackburn, and

    b. On or about September 18, 2024, Helton admitted to having contact with Thompson.

**{¶ 5}** Counsel was appointed and a probable cause hearing was held. The court

found probable cause that Helton had violated the conditions of his supervision. A revocation hearing on the merits of the alleged community control violations was scheduled for September 30, 2024.

{¶ 6} At his revocation hearing, Helton admitted to committing all of the violations alleged in the notice of supervision violations in Case No. 2023 CR 136. Pursuant to a plea agreement, in exchange for his admissions, the State agreed to recommend that he remain on community control sanctions with an added sanction that he gain entry into and successfully complete the West Central Community Based Correctional Facility program.

{¶ 7} At the same hearing, Helton was charged by way of a bill of information in Case No. 2024 CR 126 with two counts of aggravated possession of drugs, in violation of R.C. 2925.11(A), felonies of the fifth degree. Both counts alleged that the drugs involved were methamphetamine, a Schedule II controlled substance. The facts alleged in the new indictment were based on the circumstances surrounding Helton's arrest on the capias.

{¶ 8} Helton accepted service of the bill of information, waived its reading, and waived the 24-hour rule. Pursuant to a negotiated plea agreement, Helton pleaded guilty as charged to the bill of information in exchange for the State's agreement to recommend community control sanctions with special conditions, including treatment at a residential drug and alcohol facility. The parties further agreed to waive a presentence investigation report, to dispose of certain property by forfeiture to the North Lewisburg Police Department, and to stipulate that the offenses were not allied offenses of similar import

subject to merger.

**{¶ 9}** During his plea hearing, Helton was advised that any sentence imposed could be ordered consecutive to any other pending felony charge and, further, that if he was on a community control sanction, the plea could result in revocation proceedings and any new sentence could be imposed consecutively. The trial court advised Helton that if he were revoked in Case No. 2023 CR 136, the trial court could sentence him to a maximum consecutive sentence in both cases of 36 months in prison.

**{¶ 10}** Following Helton's admissions to the violations in Case No. 2023 CR 136 and his guilty pleas to the charges in Case No. 2024 CR 126, the trial court found him guilty and proceeded directly to sentencing. In Case No. 2023 CR 136, the trial court revoked Helton's community control sanctions, found that at least one of Helton's violations of community control was not a technical violation, and imposed a prison term of 7 months. In Case No. 2024 CR 126, the trial court imposed a prison term of 12 months on each count to be served concurrently with each other but consecutively to the 7-month prison term in Case No. 2024 CR 126, for a total prison term of 19 months. The trial court granted 30 days of jail-time credit in Case No. 2023 CR 136 and no jail-time credit in Case No. 2024 CR 126. Helton timely appealed.

## II. Jail-Time Credit

**{¶ 11}** Helton's first assignment of error states as follows:

> Defendant was not properly notified of his jail time credit in accordance with R.C. 2929.19(B)(2)(g)(i).

**{¶ 12}** Helton admitted in his appellate brief that the trial court included jail-time

credit in its judgment entry but claimed that the trial court failed to orally advise him of his jail-time credit at the sentencing hearing. Following the State's response that the record demonstrates that the trial court orally advised Helton of his jail-time credit at the time of sentencing, Helton requested in his reply brief to withdraw his first assignment of error. We grant Helton's request to withdraw this assignment of error and will not address it.

### III. Community Control Violations

{¶ 13} Helton's second assignment of error states as follows:

The Court improperly found the violations of community control to be non-technical violations.

{¶ 14} According to Helton, his community control violations were all "technical violations" such that the 7-month prison sentence should be vacated. The State responds that at least one of Helton's community control violations was a non-technical violation and therefore the trial court properly imposed a 7-month prison sentence.

{¶ 15} When an offender placed on community control sanctions violates a condition of that community control, "R.C. 2929.15(B) provides the trial court a great deal of latitude in sentencing the offender." *State v. Brooks*, 2004-Ohio-4746, ¶ 20. "Under R.C. 2929.15(B), the trial court may impose (1) a longer time of community control under the same sanction, (2) a more restrictive sanction, thereby changing the conditions of community control, or (3) a prison term." *Id.* at ¶ 22. If an offender is placed on community control sanctions for a felony of the fifth degree, a trial court may impose a prison term as a penalty for a community control violation, but the amount of prison time that the court may impose for a "technical violation" is limited to 90 days. R.C.

2929.15(B)(1)(c)(i).

{¶ 16} The term "technical violation" was not previously defined in the Revised Code. Thus, in *State v. Nelson*, 2020-Ohio-3690, the Ohio Supreme Court clarified the term and concluded that an offender commits a "technical violation" if the condition violated was "akin to an 'administrative requirement facilitating community control supervision.' " *Id.* at ¶ 26, quoting *State v. Davis*, 2018-Ohio-2672, ¶ 18 (12th Dist.). The Court further explained that when a violation "concerns a condition of community control that was 'specifically tailored to address' matters related to the defendant's misconduct or if it can be deemed a 'substantive rehabilitative requirement which addressed a significant factor contributing to' the defendant's misconduct," the violation does not amount to a technical violation. *Id.*, quoting *Davis* at ¶ 17-18.

{¶ 17} Following the Ohio Supreme Court's decision in *Nelson*, the General Assembly amended R.C. 2929.15 to define the term "technical violation." Relevant here, a "technical violation" means a violation of a condition of a community control sanction imposed for a felony of the fifth degree that is not an offense of violence or a sexually oriented offense, and to which neither of the following apply:

(1) The violation consists of a new criminal offense that is a felony or that is a misdemeanor other than a minor misdemeanor, and the violation is committed while under the community control sanction.

(2) The violation consists of or includes the offender's articulated or demonstrated refusal to participate in the community control sanction imposed on the offender or any of its conditions, and the refusal

demonstrates to the court that the offender has abandoned the objects of the community control sanction or condition.

R.C. 2929.15(E)(1)-(2).

{¶ 18} At the revocation hearing in Case No. 2023 CR 136, Helton admitted to committing all of the alleged violations. These violations included: 1) Helton's failure to report to the office as ordered by his supervising officer; 2) Helton's admitted use of marijuana, methamphetamine, and amphetamine in and around Champaign County; 3) Helton's unsuccessful discharge from the West Central Justice Reinvestment Grant Program; and 4) Helton's arrest at a residence where he admittedly resided with Blackburn and his admission to having contact with Thompson. Notably, at the same time Helton entered his admission to the violations, he also entered guilty pleas in Case No. 2024 CR 126 to two counts of aggravated possession of drugs, felonies of the fifth degree. The two new felonies were based on the same underlying facts related to Helton's violation of Standard Condition #9 in that he admitted to using methamphetamine in and around Champaign County.

{¶ 19} Helton's admission in Case No. 2023 CR 136 that on or about September 13, 2024, he used methamphetamine and amphetamine in Champaign County was an acknowledgement to a non-technical violation of his community control sanctions. *See State v. Farley*, 2024-Ohio-32385, ¶ 18 (12th Dist.) (continued use of methamphetamine was a non-technical violation of community control). R.C. 2925.11(A),(C)(1)(a) provides that no person shall knowingly obtain, possess, or use a Schedule I or II controlled substance or controlled substance analog. Both methamphetamine and amphetamine

are Schedule II controlled substances. A violation of R.C. 2925.11(A),(C)(1)(a) is a felony offense. At the same time Helton entered his admission to the community control violations, he also entered guilty pleas in Case No. 2024 CR 126 to two counts of aggravated possession of drugs, felonies of the fifth degree. The first count alleged that on or about September 6 through September 13, 2024, Helton knowingly obtained, possessed, or used a controlled substance or controlled substance analog and the drug involved was methamphetamine, a Schedule II controlled substance. The second count alleged that on or about September 12, 2024, Helton knowingly obtained, possessed, or used a controlled substance or controlled substance analog and the drug involved was methamphetamine, a Schedule II controlled substance. When Helton entered his guilty pleas, he admitted that he had committed the offenses. Accordingly, Helton's violation consisted of a new criminal offense that was a felony, and that violation was committed while he was under a community control sanction. These factual admissions established that Helton committed a non-technical violation of a condition of his community control. R.C. 2929.15(E)(1).

{¶ 20} Additionally, the trial court found that Helton's violations demonstrated his refusal to participate in the community control sanctions imposed on him or any of their conditions, and the refusal demonstrated to the court that Helton had abandoned the objects of the community control sanctions or conditions. Helton admitted that he had failed to report to his probation officer as ordered. The violation notice provided that Helton failed to report as ordered by his supervising officer on March 5 and 14, 2024. Helton argues that "non-reporting is generally considered to be a technical violation" and

the violation was only for two dates.   Although it is possible that missing only two ordered visits may constitute a technical violation, we cannot conclude under these circumstances that it was a technical violation.   *See State v. McManus*, 2024-Ohio-2588, ¶ 26-27 (7th Dist.) (although only failing to report to her supervising officer once, defendant's failure to appear for more than two months demonstrated an absolute refusal to be supervised and was not a technical violation); *State v. Crose*, 2023-Ohio-880, ¶ 13 (3d Dist.) (defendant's failure to contact her probation officer upon release from jail and apprehension on a bench warrant approximately three weeks later was a non-technical violation of her community control sanctions).   Following Helton's failure to report as ordered by his supervising officer in March, on April 11, 2024, a capias was issued for Helton's arrest because his whereabouts were unknown.   It was not until September 12, 2024, that Helton was arrested on the capias.   According to Helton at his revocation hearing, he failed to report because he went into hiding with Blackburn, with whom he was not to have in-person contact, and they were using illegal drugs.   Helton also failed to attend and participate in his drug and mental health treatment during that time.   By not reporting at all for a period of six months, Helton failed to meet any of the conditions of his community control sanctions and thus committed non-technical violations of his community control.   R.C. 2929.15(E)(2).

{¶ 21} Because we conclude that Helton was sentenced for non-technical violations of his community control sanctions, the trial court was not limited to imposing a 90-day sentence but rather could sentence Helton to any prison term within the permissible range of prison terms for a felony of the fifth degree, namely 6-12 months.

R.C. 2929.14(A)(5). When Helton was originally sentenced in Case No. 2023 CR 136 for the crime of aggravated possession of drugs, a felony of the fifth degree, the trial court imposed a two-year community control sanction and advised Helton that a violation of his community control sanctions could result in a prison sentence of 6 to 12 months. After finding Helton in violation of his community control sanctions, the trial court imposed a sentence of 7 months, which was within the permissible range. Accordingly, we see no reversible error in the trial court's sentence.

{¶ 22} To the extent Helton argues that any of the community control conditions should not have been imposed on him in the first place, he should have raised that argument in a direct appeal from the imposition of the conditions, not from the finding that he had violated them. "Res judicata bars [a defendant] from raising an issue on appeal from the revocation of his community control sanctions which could have and should have been raised on direct appeal from the judgment of conviction in which community control was first imposed." *State v. Cooper*, 2019-Ohio-3919, ¶ 22 (2d Dist.), citing *State v. Turner*, 2017-Ohio-4101, ¶ 8 (2d Dist.).

{¶ 23} Helton's second assignment of error is overruled.

### IV. Consecutive Sentences

{¶ 24} Helton's third assignment of error states as follows:

The Court erred in ordering consecutive sentences.

{¶ 25} Helton claims that consecutive sentences were not necessary because he posed no danger to the public and his sentences were disproportionate to his crimes. Helton contends that he should have instead received minimum, concurrent sentences

for his offenses. We do not agree.

{¶ 26} In reviewing felony sentences, this court must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 7. "Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain enumerated statutes (including R.C. 2929.14(C)(4), which addresses consecutive sentences); or (2) the sentence is otherwise contrary to law." *State v. Wells*, 2024-Ohio-4813, ¶ 45 (2d Dist.), citing *Marcum* at ¶ 9 and R.C. 2953.08(G)(2). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 27} "Ohio law presumes that a defendant convicted of multiple crimes will serve his sentences concurrently." *State v. Glover*, 2024-Ohio-5195, ¶ 38, citing R.C. 2929.41(A). But R.C. 2929.14(C) provides an exception to allow consecutive sentences. Under that statute, a trial court must make certain consecutive sentence findings at the sentencing hearing before imposing consecutive sentences and must incorporate those findings into its sentencing entry, but it has no obligation to state reasons to support its findings. *State v. Bonnell*, 2014-Ohio-3177, syllabus. Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the

offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one or more of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. R.C. 2929.14(C)(4); *State v. Hill*, 2024-Ohio-3330, ¶ 7 (2d Dist.). Those factors include:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c). "The plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-Ohio-3851, ¶ 5. "R.C. 2953.08(G)(2)(a) precludes an appellate court from substituting its judgment for that of the trial court . . . ." *Id.* at ¶ 22.

{¶ 28} Helton concedes that the trial court made the requisite consecutive sentencing findings at the time of sentencing and in the judgment entry. However, Helton argues that the consecutive sentences were not necessary to protect the public from future crime or to punish him and consecutive sentences were disproportionate to the seriousness of Helton's conduct and the danger he posed to the public. Helton claims that the trial court was more focused on Helton's continued contact with Blackburn and her substance abuse issues than on protecting the public. Helton also emphasizes his lack of a prior prison sentence and the recommendation that he be placed in an in-patient treatment facility instead of prison. Following a thorough review of the record, we cannot say that the trial court's consecutive sentencing findings were clearly and convincingly not supported by the record.

{¶ 29} When Helton committed the offense at issue in Case No. 2023 CR 136, he was serving a term of probation for a misdemeanor endangering children offense. The juvenile victim involved in that offense was Blackburn's child. Although it was his first felony conviction, Helton had a prior criminal history of committing various misdemeanor offenses dating back to 1997. Nevertheless, the trial court granted Helton community control sanctions. At the sentencing hearing, both parties emphasized the need to address Helton's substance abuse problems and mental health issues. It was noted by the State that Helton's substance abuse issues were "exacerbated by his poor peer associations." Aug. 15, 2023 Sentencing Tr. 20. Thus, the court imposed various sanctions to address Helton's drug addiction and mental health issues along with a no contact order with several individuals, including Blackburn, with the exception of

telephone and social media contact with her. In addition to Helton's having his own felony case, Blackburn likewise had pending felony drug charges with the Champaign County Common Pleas Court.

**{¶ 30}** While on community control sanctions in Case No. 2023 CR 136, Helton absconded and committed two new felony offenses. At the time of sentencing in Case No. 2024 CR 126, Helton was 45 years old. In explaining why he absconded, Helton stated that he went into hiding with Blackburn so that they could continue to be together, knowingly in violation of both their probation orders. He also used illegal drugs to deal with his mental health issues, and he was otherwise not attending treatment as ordered. During the sentencing hearing, the trial court discussed Helton's co-dependency on drugs with his fiancé/co-defendant and the need to keep them separated so that they could each take care of their individual needs. While on community control sanctions, Helton failed to take advantage of the opportunity to participate in drug and mental health treatment as ordered or to complete any of his other community control sanctions. Helton demonstrated that he was not amenable to community control sanctions, and the trial court reasonably found that there was a need to protect the public from future crime or to punish him.

**{¶ 31}** Helton also claims that consecutive sentences were disproportionate to the seriousness of his conduct because his offenses were clearly drug related and he could have been sent to in-patient treatment instead. While the trial court could have ordered Helton to attend and complete an in-patient treatment facility, it was not required to do so. Helton had already been unsuccessfully discharged from the West Central Justice

Reinvestment Grant Program and had not attended his court-ordered drug recovery. In this case, Helton failed to comply with his community control sanctions, continued to abuse drugs, and maintained negative peer relationships. The Ohio Supreme Court has held that "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell*, 2014-Ohio-3177, at ¶ 29. Based upon this record, we cannot conclude that the trial court's consecutive sentence findings were clearly and convincingly not supported by the record. Helton's third assignment of error is overruled.

## V. Conclusion

{¶ 32} Having overruled all of the assignments of error, we will affirm the judgments of the trial court.

. . . . . . . . . . . .

TUCKER, J. and HANSEMAN, J., concur.