[Cite as *State v. Wells*, 2024-Ohio-4813.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-41 |
| | : | |
| v. | : | Trial Court Case Nos. 22-CR-278; |
| | : | 22-CR-470 |
| DEREAL LAMONT WELLS | : | |
| | : | (Criminal Appeal from Common Pleas |
| Appellant | : | Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 4, 2024

. . . . . . . . . . .

RICHARD L. KAPLAN, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Dereal Lamont Wells appeals from his convictions for domestic violence, felonious assault, having a weapon under disability, tampering with evidence, and trespass into a habitation where a person is present or likely to be present.

For the reasons set out below, we affirm.

## I.     Factual and Procedural History

{¶ 2} This appeal arises from two cases which were consolidated for trial.   In Clark C.P. No. 2022-CR-470, Wells was indicted on two counts of domestic violence, one count of felonious assault, one count of attempted murder, one count of having weapons under disability, and one count of tampering with evidence.   One of the domestic violence charges and the felonious assault charge carried attendant three-year firearm specifications.   In Clark C.P. No. 2022-CR-278, Wells was indicted on one count of trespass in a habitation when a person is present or likely to be present.   He filed a motion to suppress evidence, which was overruled.   The following evidence was presented at trial.

{¶ 3} At all relevant times, the victim and Wells lived together and were involved in an intimate relationship.   On November 3, 2021, Wells was asleep on a couch when his gun and bullets fell out of his pocket.   The victim hid the items.   When Wells awoke, he became angry that the victim had taken his gun and demanded that she return the gun. According to the victim, he pushed and dragged her around the house while looking for the gun.   At one point, Wells placed her in a compressing position, which caused her to be unable to breathe and to feel "fuzzy."   He also hit her and threw her down the basement stairs.

{¶ 4} The victim's minor child made a call to 911 during the assault.   Clark County Sheriff's Department deputies responded.   Upon arriving at the residence, a deputy

overheard a man say, "I'm gonna kill you, bitch." Deputies knocked on the door but received no response. The victim testified that Wells had told her not to answer the door. Eventually police broke through the door and encountered Wells, the victim, and her minor children. The victim did not cooperate with the deputies and did not make a written statement at that time. At trial, she testified that she had not cooperated because she believed Wells would retaliate if she did.

{¶ 5} On March 22, 2022, the victim and Wells were sitting on the bed in their shared bedroom. Wells was seated with his back to the headboard facing the closet, with his gun in his lap. The victim was seated with her back toward Wells. The victim heard Wells move the slide on the gun to load a bullet into the chamber. The victim moved just as the gun discharged. She testified that the discharge came so close to her ear that she temporarily lost hearing and smelled burnt hair by her ear. She turned to face Wells and could see he was speaking, but she was unable to hear him.

{¶ 6} The victim immediately ran to her daughter's room to try to get her out of the house. Wells entered the child's bedroom, and the victim attempted to calm him and get him to leave the house. The two exited the house together, but the victim went back inside and locked the door. Wells kicked the door open. The two then traveled in the victim's van to a nearby Speedway gas station. The victim went to the restroom. When she returned to the van, she saw that Wells had exited the van, and she got in the van and drove off.

{¶ 7} Shortly thereafter, police received a 911 call from an individual who stated that a man had broken into the individual's house on Woodward Avenue. The man, later

identified as Wells, had entered the house and kept asking, "Where is [S]?"[1] According to the evidence, Wells had noticed a van that was similar to the victim's van parked outside of that residence. The residents of the home were able to get Wells out of their home and took pictures of him on their cell phones. Wells was seen a few minutes later trying to get into the van. He was subsequently located by a neighbor lying in the bed of a pickup truck. The neighbor held Wells at gunpoint until the deputies arrived.

{¶ 8} Wells was arrested and booked into the Clark County Jail. He was required to change into jail clothing, and his personal clothing was placed in a property room where all inmate property was stored. Thereafter, the sergeant investigating the case retrieved the clothing, packaged it as evidence, and sent it to the Ohio Bureau of Criminal Investigation to be tested for gunshot residue. Wells's sweatpants and sweatshirt tested positive for gunshot residue.

{¶ 9} Investigators took pictures of the front door of the victim's home. The pictures showed damage to the door frame. Investigators also found a bullet hole in the wall of the closet that Wells had been facing when he discharged his gun. Pictures of the damaged door and bullet hole were introduced at trial.

{¶ 10} The jury found Wells guilty on all counts except attempted murder. At sentencing, the trial court merged one of domestic violence offenses with the felonious assault, and the State elected to proceed to sentencing on the felonious assault. The court then imposed prison terms of 24 months each for the convictions of domestic violence, having weapons under disability, and tampering with evidence. The court

---

[1] The name used by Wells was the name of the victim of the domestic violence offenses.

imposed a 12-month sentence for trespassing in a habitation. Finally, the court imposed an indefinite sentence of 8 to 12 years for the felonious assault, plus a three-year mandatory prison term for the attendant firearm specification. The court specified that the sentence on the firearm specification was to be served prior and consecutive to the sentence imposed for felonious assault. The court ordered all of the sentences to run consecutively for an aggregate sentence of 18 to 22 years.

{¶ 11} Wells appeals.

## II. Suppression of Evidence

{¶ 12} Wells's first assignment of error states:

SEIZURE OF A PRISONER'S CLOTHING, HELD IN THE SHERIFF'S SAFEKEEPING, FOR THE PURPOSE OF A SEARCH OR TESTING FOR EVIDENCE OF A CRIME REQUIRES THE LAW ENFORCEMENT OFFICER TO OBTAIN A SEARCH WARRANT. FAILURE TO OBTAIN A SEARCH WARRANT RENDERS ALL EVIDENCE AND TESTIMONY RESULTING TESTIMONY [SIC] INADMISSIABLE [SIC] AT TRIAL.

{¶ 13} Wells contends the trial court erred by denying his motion to suppress. Specifically, he notes that when he was booked into jail, his clothing was placed in the "jail property room which housed property of incarcerate[d] persons." The clothing was later retrieved by the investigating officers and sent to a lab to be tested for gunshot residue. Wells asserts the seizure and testing were improper because the clothing was

taken without a warrant.

{¶ 14} We addressed this very issue in *State v. Kinley*, 1993 WL 224496 (2d Dist. June 24, 1993), wherein we noted that the United States Supreme Court has held that, "once an accused has been lawfully arrested and is in custody, the effects in his possession at the place of his detention that were subject to search at the time and place of arrest may lawfully be searched and seized without a warrant even after a substantial time has elapsed between the arrest and later administrative processing and the taking of the property as evidence." *Id.* at \*6, quoting *United States v. Edwards*, 415 U.S. 800 (1974), syllabus. Additionally, the court noted that a person and the property in his immediate possession may be searched at the station house after the arrest has occurred at another place and, if evidence of crime is discovered, it may be seized and admitted in evidence. Further, "[there is no] doubt that clothing or other belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis or that the tests results are admissible at trial." *Id.* at \*7, quoting *Edwards* at 804-805.

{¶ 15} Based upon *Edwards* and *Kinley*, we conclude the trial court did not err in overruling Wells's motion to suppress.

{¶ 16} The first assignment of error is overruled.


### III.    Competency

{¶ 17} Wells asserts the following for his second assignment of error:

THE COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO

ORDER A COMPETENCY EVALUATION AFTER BEING ADVISED BY COUNSEL MR. WELLS WAS RECEIVING SOCIAL SECURITY DISABILITY FOR MENTAL RETARDATION AND WAS POSSIBLY BI-POLAR.

{¶ 18} Wells claims the trial court erred in not ordering a competency evaluation. On the second day of trial, just after the start of the afternoon session and just before the State called its last witness, defense counsel addressed the court and stated:

I want the Court to know just less than 5 minutes ago my client informed me that he had discussions with his mother and that he is receiving Social Security disability for mental retardation - - this is what he has related to me. I haven't been able to confirm that yet - - and bipolar disorder, Judge. So I felt the only thing I could do was bring that to the attention of the Court and ask the Court how we should proceed.

It would be our position that if, in fact, those are ailments that he does suffer from, that there may be a need to have his competency addressed. So I apologize for the untimeliness of this. We had no indication of it whatsoever prior to trial, and it was just brought up within the last five minutes.

Tr. p. 312-313.

{¶ 19} "It has long been recognized that 'a person [who] lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.' " *State v. Smith*,

89 Ohio St.3d 323, 329, (2000), quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975). Thus, due process requires that a criminal defendant who is legally incompetent may not be tried. *State v. Thomas*, 2002-Ohio-6624, ¶ 36.

{¶ 20} "A defendant is presumed to be competent to stand trial." R.C. 2945.37(G). However, the trial court, prosecutor, or defense counsel "may raise the issue of the defendant's competence to stand trial." R.C. 2945.37(B). R.C. 2945.37 requires a competency hearing if a request is made before trial. But "[i]f the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion." R.C. 2945.37(B). Thus, "the decision as to whether to hold a competency hearing once trial has commenced is in the court's discretion." *State v. Rahman*, 23 Ohio St.3d 146, 156 (1986).

{¶ 21} Even assuming that defense counsel's statement constituted a request for a competency hearing, we find no abuse of discretion by the trial court in denying a hearing. The trial court addressed the issue stating that it had observed Wells during "a number of pretrial hearings" and during the course of the trial and noting that Wells had been taking notes during trial which he shared with his counsel. The court stated that nothing in Wells's demeanor, behavior, or actions indicated that he had been unable to participate in his defense.

{¶ 22} At oral argument, Wells suggested that the trial court should have "stayed the trial and ordered an expedited hearing." However, Wells did not request a stay, continuance, or recess. Further, we note that the matter was raised approximately two hours before the defense rested its case. During that time, no attempt was made to

procure supporting documentation that Wells actually was receiving Social Security disability benefits.

{¶ 23} The record is devoid of any, let alone sufficient, indicia of incompetency before and during trial that might have compelled the trial court to order a competency evaluation. As noted by the trial court, Well's demeanor at trial did not suggest any competency issues. The record does not indicate any irrational behavior during court proceedings. Further, although Wells claimed he was receiving disability for "mental retardation," he did not attempt to provide supporting documentation such as medical records or Social Security pay stubs. In short, the record lacks any objective support for Wells's suggestion of incompetency.

{¶ 24} The trial court had the opportunity to see and interact with Wells, and it observed no indication of incompetency. We cannot conclude that the trial court abused its discretion in not ordering a competency evaluation and conducting a competency hearing under the circumstances presented. The second assignment of error is overruled.

## IV. Sufficiency and Manifest Weight

{¶ 25} The third assignment of error is as follows:

THE DEFENDANT'S TWO (2) DOMESTIC VIOLENCE CONVICTIONS; FELONIOUS ASSAULT CONVICTION; TAMPERING WITH EVIDENCE CONVICTION AND WEAPONS UNDER DISABILITY ARE BASED ON INSUFFICIENT EVIDENCE AND ARE AGAIST [SIC] THE MANIFEST WEIGHT OF THE EVIDENCE AND THUS SHOULD BE

REVERSED.

{¶ 26} Under this assignment of error, Wells challenges all his convictions as being unsupported by the evidence, except for trespass into a habitation.

{¶ 27} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 2010-Ohio-5160, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements proven beyond a reasonable doubt. *Id.*

{¶ 28} When we review whether a conviction was against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A conviction should not be reversed as being against the manifest weight of the evidence except " 'in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*

{¶ 29} Further, because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony

of particular witnesses. *State v. Lawson*, 1997 WL 476684, *4 (2d Dist.). Accordingly, the credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *State v. Hammad*, 2014-Ohio-3638, ¶ 13 (2d Dist.). The jury, as the fact-finder, "is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Ellis*, 2013-Ohio-1184, ¶ 18 (8th Dist.). "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way." (Citation omitted.) *State v. Bradley,* 1997 WL 691510, *4 (2d Dist.).

{¶ 30} Finally, "[a]lthough sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.). As a result, a determination that a conviction is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra,* 2022-Ohio-1421, ¶ 50 (2d Dist.).

{¶ 31} Wells was charged with two counts of domestic violence in violation of R.C. 2919.25(A) which states, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "Physical harm" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A person acts knowingly when "regardless of purpose, . . . the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware

that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."   R.C. 2901.22(B).

{¶ 32} The first charged incident of domestic violence occurred when the victim hid Wells's gun.   As set forth above, the victim testified to Wells's actions which, at the very least, constituted an attempt to cause physical harm.   The State offered corroborating evidence that the victim's minor child called 911 to report the incident.   Sheriff's deputies testified that they responded to the scene and overheard a man threaten to kill someone. One deputy testified that he remembered the victim had an abrasion and bruising on one leg.   The jury observed the victim and the deputies and chose to give credence to their testimony.   On this record, we cannot say the jury lost its way in finding Wells committed the offense of domestic violence in regard to this incident.

{¶ 33} The second offense of domestic violence and the felonious assault (which were merged) arose from the same conduct.   R.C. 2903.11 proscribes felonious assault and states: "[n]o person shall knowingly . . . [c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance."

{¶ 34} Well first asserts that this conviction should be reversed because the State failed to demonstrate that the victim had suffered serious physical harm.   However, the relevant statutes do not require a showing of serious physical harm.   Instead, they merely require a showing that he caused or attempted to cause physical harm to the victim.   The victim testified that she suffered a temporary loss of hearing after the gun was fired

because the bullet traveled close enough to her ear to burn the hair in that area. This clearly satisfied the physical harm component of the statute.

{¶ 35} Wells next asserts that the State did not prove he had knowingly fired the gun at the victim. In support, he argues that it was "improbable" that he had aimed at -- but missed -- the victim, given that she was seated "3.22 feet from the firearm[.]" This argument ignores the victim's testimony that she had heard Wells move the slide on the gun and had begun to move at the same time he fired the gun. Thus, the jury could have reasonably inferred that Wells had aimed at the victim but she moved out of the path of Wells's aim. Therefore, we cannot find that the jury lost its way in concluding that the State proved the offense of felonious assault.

{¶ 36} Next, Wells was convicted of having a weapon under disability as proscribed by R.C. 2923.13. That statute states, in pertinent part: "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if . . . the person has been convicted of any felony offense of violence[.]"

{¶ 37} Wells's entire argument regarding this conviction states: "[as] to the firearm under disability charge other than the complainant's statement Mr. Wells's [sic] had a firearm is not supported by the physical evidence. The fun [sic] was never found."

{¶ 38} Wells does not dispute that there was evidence he had previously been convicted of a felony offense of violence. Instead, he contends there was no evidence, other than the testimony of the victim, that he had a gun in his possession.

{¶ 39} Based upon the record before us, we cannot say that the jury lost its way in

convicting Wells of this offense.   The State presented competent, credible evidence that, during a jailhouse call involving Wells, his mother, and the victim, Wells admitted to possession of a firearm.   Further, the victim testified that Wells had possessed and used a firearm during the commission of the offense.   The jury was free to believe this testimony, and we cannot say that the victim's testimony was inherently incredible.

{¶ 40} Finally, Wells was convicted of tampering with evidence in violation of R.C. 2921.12(A)(1).   That statute provides: "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall . . . [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

{¶ 41} During the jailhouse call mentioned above, Wells told the victim that he had hidden his gun under a mattress by a dumpster located at a Rent-A-Center store by the Speedway after the victim fled the Speedway in her van.   The jury could have reasonably inferred that Wells had attempted to conceal the gun because he thought the victim might report his actions to the police.   Thus, the record supported this conviction.

{¶ 42} Because there was competent, credible evidence going to the elements of each offense of which Wells was convicted, Wells's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence.   The third assignment of error is overruled.

## V.    Sentencing

{¶ 43} Wells's fourth assignment of error states:

THE SENTENCES AND SENTNECING [SIC] ARE DISPROPOTIONATE [SIC] TO THE CONVICTIONS.

{¶ 44} Wells's argument in support of this assignment of error states, in its entirety, that "[t]he sentence handed down by the court of 15 [sic] to 22 years is disproportionate and should be reversed and revised."

{¶ 45} When reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G). *State v. Marcum*, 2016-Ohio-1002, ¶ 7. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain enumerated statutes (including R.C. 2929.14(C)(4), which addresses consecutive sentences); or (2) the sentence is otherwise contrary to law. *Id.* at ¶ 9, citing R.C. 2953.08(G)(2).

{¶ 46} R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, 2020-Ohio-6729, ¶ 39. "When reviewing felony sentences that are imposed solely after considering the factors in R.C. 2929.11 and R.C. 2929.12, we do not analyze whether those sentences are unsupported by the record." *State v. McDaniel*, 2021-Ohio-1519, ¶ 11 (2d Dist.), citing *State v. Dorsey*, 2021-Ohio-76, ¶ 18 (2d Dist.). Instead, "[w]e simply must determine whether those sentences are contrary to law." *Dorsey* at ¶ 18. "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11

and the sentencing factors set forth in R.C. 2929.12." (Citation omitted.) *State v. Brown*, 2017-Ohio-8416, ¶ 74 (2d Dist.).

**{¶ 47}** There is no dispute that the sentences were within the statutory range for each offense. Further, the record affirmatively demonstrates that the trial court complied with its obligation to consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. Thus, the record demonstrates that the individual sentences were not contrary to law.

**{¶ 48}** Although not expressly challenged in Wells's assignment of error, we consider whether the trial court erred in imposing consecutive sentences. A trial court may impose consecutive sentences under R.C. 2929.14(C)(4) if it finds that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings is satisfied:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses

of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

**{¶ 49}** "[W]here a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings." *State v. Withrow*, 2016-Ohio-2884 (2d Dist.). Under R.C. 2953.08(F), the "record" includes, among other things, any presentence or other report submitted to the trial court, the trial record in the case, and any oral or written statements made by or submitted to the trial court at the sentencing hearing. The clear-and-convincing standard requires "a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶ 50}** There is no dispute that the trial court made the requisite findings for consecutive sentences. Further, Wells's brief does nothing to establish that the record clearly and convincingly does not support consecutive sentences. The record shows that Wells had a juvenile adjudication for an offense that would have constituted domestic violence had he been an adult. The trial court also noted that Wells had 15 prior convictions as an adult, six of which were offenses of violence, and that he had not responded to sanctions. The court also noted that Wells showed no remorse. Indeed, the trial court permitted Wells to speak at sentencing, and Wells spent considerable time

(14 pages out of a 36-page transcript) denying responsibility for his offenses and accusing the victim of making false allegations against him. Based upon the record before us, we conclude that Wells failed to meet his burden in challenging the imposition of consecutive sentences.

**{¶ 51}** From our review of the record, we cannot conclude that the trial court erred in sentencing. The fourth assignment of error is overruled.

## VI. Conclusion

**{¶ 52}** All of Wells's assignments of error being overruled, the judgments of the trial court is affirmed.

. . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.