[Cite as *State v. Johnson*, 2024-Ohio-6048.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-42 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 245 |
| | : | |
| WILLIAM FREDERICK JOHNSON | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on December 27, 2024

. . . . . . . . . . .

RICHARD L. KAPLAN, Attorney for Appellant

JANE A. NAPIER, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-appellant William Frederick Johnson appeals his conviction in the

Champaign County Common Pleas Court following his guilty pleas to trafficking in

marijuana, illegal use of minor or impaired person in nudity-oriented material or performance, and pandering sexually-oriented matter involving a minor or impaired person. For the following reasons, the judgment of the trial court will be affirmed.

### I. Procedural History

{¶ 2} On January 3, 2023, Johnson was indicted on one count each of: corrupting another with drugs, in violation of R.C. 2925.02(A)(4)(a), a felony of the fourth degree (Count 1); trafficking in marijuana, in violation of R.C. 2925.03(A)(1) a felony of the fourth degree (Count 2); permitting drug abuse, in violation of R.C. 2925.13(B), a felony of the fifth degree (Count 3); trafficking in marijuana, in violation of R.C. 2925.03(A)(1), a felony of the fourth degree (Count 4); possessing criminal tools, in violation of R.C. 2923.24(A), a felony of the fifth degree (Count 5); and illegal use of minor or impaired person in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(1), a felony of the second degree (Count 6).

{¶ 3} At a final pretrial conference on February 27, 2023, Johnson was served with a bill of information for one count of pandering sexually-oriented matter involving a minor or impaired person, in violation of R.C. 2907.322(A)(1), a felony of the second degree. The bill of information was subsequently referred to as Count 7.

{¶ 4} Following Johnson's waivers and arraignment related to the bill of information, Johnson entered a negotiated guilty plea. Pursuant to the plea agreement, Johnson agreed to enter guilty pleas to Counts 2, 6, and 7, in exchange for the State's dismissal of the remaining counts. Additionally, Johnson agreed to forfeit certain property and pay court costs and appointed counsel fees. The parties further agreed

that Johnson was subject to the imposition of 818 days of potential post-release control enhancement time because he was on post-release control at the time he committed the new felony offenses. After the court accepted Johnson's guilty plea, it ordered a presentence investigation report ("PSI") and scheduled sentencing for March 29, 2023.

{¶ 5} At sentencing, the trial court imposed a prison term of 18 months for Count 2, a mandatory indeterminate prison term of a minimum of 2 years and a maximum of 3 years for Count 6, and a mandatory indeterminate prison term of a minimum of 7 years imprisonment and a maximum of 10.5 years for Count 7. The sentences for Counts 6 and 7 were ordered to be served concurrently to each other but consecutively to Count 2. The trial court further imposed an additional 730 days in prison for the post-release control violation, which was ordered to be served consecutively to the prison terms imposed for the new felony convictions. The trial court imposed a mandatory five years of post-release control upon Johnson's release from prison. Johnson was ordered to pay a total fine of $500 and court costs, and the court ordered the specified agreed items to be forfeited pursuant to the plea agreement. Johnson was advised he would be classified as a Tier II sex offender and was notified of his sex offender requirements.

{¶ 6} On December 20, 2023, Johnson filed an untimely notice of appeal. This court granted his motion for delayed appeal, and Johnson now raises four assignments of error for our review.

## II. Competency to Enter a Guilty Plea

{¶ 7} In his first assignment of error, Johnson contends that his guilty plea was not entered knowingly, intelligently, and voluntarily. According to Johnson, he was not

competent to enter a guilty plea, and the trial court should have ordered a competency hearing rather than proceeding with the plea colloquy. We do not agree.

{¶ 8} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." (Citations omitted.) *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). "In order for a plea to be knowing, intelligent, and voluntary, the trial court must comply with Crim.R. 11(C)." (Citation omitted.) *State v. Russell*, 2011-Ohio-1738, ¶ 6 (2d Dist.). "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest." *State v. Veney*, 2008-Ohio-5200, ¶ 8. "By following this rule, a court ensures that the plea is knowing, intelligent, and voluntary." *State v. Cole*, 2015-Ohio-3793, ¶ 12 (2d Dist.), citing *State v. Redavide,* 2015-Ohio-3056, ¶ 12 (2d Dist.). In considering whether a guilty plea was entered knowingly, intelligently, and voluntarily, an appellate court examines the totality of the circumstances. *State v. Montgomery*, 2016-Ohio-5487, ¶ 43.

{¶ 9} In this case, the trial court fully complied with Crim.R. 11 and conducted a thorough plea colloquy with Johnson to ensure that he understood the nature of the proceedings and was capable of entering his guilty pleas knowingly, intelligently, and voluntarily. Nevertheless, Johnson contends that the trial court's knowledge of the effect his prescription medications had on his mental state, the lack of prescriptions he may have had, and his suicide attempt required the trial court to have a competency evaluation rather than continue with the plea hearing. Although neither party requested a

competency evaluation, Johnson claims that the court should have sua sponte ordered a competency evaluation based on the statements made at the plea hearing.

{¶ 10} "Fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial." *State v. Berry*, 72 Ohio St.3d 354, 359 (1995). A defendant who is not competent to stand trial is likewise not competent to enter a guilty plea. This is because a defendant's competence to knowingly and intelligently enter a guilty plea is gauged by the same standard used to determine whether a defendant is competent to stand trial. *State v. Simpson*, 2016-Ohio-1267, ¶ 11 (2d Dist.), citing *Godinez v. Moran*, 509 U.S. 389, 397-398 (1993).

{¶ 11} "R.C. 2945.37(G) creates a rebuttable presumption that a defendant is competent to stand trial." *State v. Barton*, 2006-Ohio-1324, ¶ 56. "This presumption remains valid under R.C. 2945.37(G) unless 'after a hearing, the court finds by a preponderance of the evidence' that the defendant is not competent." *State v. Adams*, 2004-Ohio-5845, ¶ 74, quoting R.C. 2945.37(G). The test to determine whether a defendant is competent to stand trial or plead guilty is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *State v. Lawson*, 2021-Ohio-3566, ¶ 49, quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960). Factors courts should consider when determining a defendant's competence include: "(1) doubts expressed by counsel as to the defendant's competence; (2) evidence of irrational behavior; (3) the defendant's demeanor at trial; and (4) prior medical opinion relating to competence to stand trial."

*State v. Schooler*, 2018-Ohio-3295, ¶ 27 (2d Dist.), quoting *State v. Rubenstein*, 40 Ohio App.3d 57, 60-61 (8th Dist. 1987). Absent sufficient indicia of incompetency, a trial court need not hold a competency hearing. *State v. Stiltner*, 2019-Ohio-4631, ¶ 8 (3d Dist.), citing *State v. Bock*, 28 Ohio St.3d 108 (1986).

{¶ 12} R.C. 2945.37(B) provides that the issue of competency may be raised by the prosecution, the defense, or on the court's own motion. If the issue of defendant's competency is raised prior to trial, a competency hearing is mandatory. *Bock* at 109. Although a hearing is required if competency is raised prior to trial, a court is not required to order a competency evaluation. *State v. McCoy*, 2024-Ohio-98, ¶ 11 (2d Dist.). *See also* R.C. 2945.37(C). Nevertheless, the failure to hold a mandatory competency hearing is harmless error when there is not sufficient indicia of incompetence. *Bock* at 110.

{¶ 13} The record demonstrates that neither the defense, the prosecution, nor the trial court requested a competency evaluation before or at the time of the guilty plea. Johnson contends, however, that based on the statements made during the plea colloquy, the trial court should have sua sponte ordered an evaluation. Johnson claims three issues called his competence into question. First, Johnson asserts that his suicide attempt was sufficient, in itself, to require a competency evaluation. Second, Johnson indicated that he was on prescription medications at the time of his plea, but that he either did not receive all of them while in jail or that the levels were reduced, which had affected his ability to knowingly and intelligently enter a guilty plea. Third, as a result of his lack of medication, Johnson contends that he would tell people what they wanted to hear, and

that was what he did during the plea hearing.

{¶ 14} The trial court noted for the record that, when Johnson was ordered to exit his cell, he went to the bars on the second floor and "flung himself over the railing holding on to the bars hanging from the railing." Plea Tr. 4. A corrections officer was able to grab Johnson and secure him without any injuries to Johnson or anyone else. When discussing the purported suicide attempt, Johnson stated that he "just freaked out today" and did not "want to go through depression and stress." *Id*. at 18-19. At no point did Johnson indicate that, as a result of his actions, he was unable to proceed or was incapable of understanding the proceedings. Rather, the record reflects that Johnson understood the proceedings and was capable of consulting with his counsel with a reasonable degree of rational understanding. In fact, multiple times during the hearing Johnson was given the opportunity to consult with his attorney, and he took advantage of these opportunities. Johnson appropriately answered the court's inquiries and repeatedly affirmed his understanding of the proceedings and his intention to plead guilty. We cannot conclude under these circumstances that the fact that Johnson had purportedly attempted suicide required the trial court to sua sponte order a competency evaluation.

{¶ 15} Moreover, Johnson has not cited any legal authority to support his contention that a suicide attempt alone requires a trial court to order a competency evaluation. On the contrary, we have previously noted that "[s]everal appellate courts have held that a suicide attempt, when it is not coupled with any other evidence of incompetence, does not warrant the conclusion that a defendant did not knowingly and

voluntarily enter a guilty plea." *State v. Johnson*, 2019-Ohio-1259, ¶ 8 (listing cases). *See also State v. Robinson*, 2007-Ohio-6831 (8th Dist.) (finding the defendant was competent to enter a guilty plea despite attempting suicide the previous day); *State v. Barton*, 108 Ohio St.3d 402, ¶ 60 (2006) (defendant's prior suicide attempt did not constitute sufficient indicia to trigger the trial court's duty to sua sponte order an evaluation of his competence).

{¶ 16} Johnson next points to statements made during the plea colloquy discussing his prescription medications. Johnson stated that he had taken his medications as prescribed that day for bipolar disorder, anxiety, PTSD, seizures, and heart issues. Johnson stated that he was taking Zoloft, Tegretol, and "a couple heart meds" and that there were medications he believed he should be getting but had not gotten while in jail. Johnson stated that he was not receiving Seroquel and Elavil, both of which were to help with his anxiety, because the jail would not allow it. Johnson further claimed that he had not received Lamictal to treat his PTSD and bipolar since he was incarcerated in November 2022, again because the jail had not allowed it. Although Johnson believed he was entitled to other medications, this did not require the trial court to order a competency evaluation. Johnson admitted that he had taken the medications he was permitted to take as prescribed. He further stated that he understood everything that was going on in court and asserted he wanted to proceed with the guilty plea.

{¶ 17} Finally, Johnson's contention that the trial court should have sua sponte ordered a competency evaluation because he had merely said what the court wanted him to say is belied by the record. During the plea colloquy, Johnson made some comments

about how, when he felt really stressed out, he would sometimes "be saying it to say it"; the trial court interrupted him. After reviewing the numerous prior felony convictions to which Johnson had previously pleaded guilty and been sentenced to prison, the following exchange occurred:

THE COURT: Okay. In the big picture, I understand that you don't feel up to tip-top shape, 100 percent, emotionally happy, and content with what is going on. I get that.

[JOHNSON]: Yes.

THE COURT: But what we're not going to do here is go through a plea process only for you somewhere down the road to say, well, I probably shouldn't have entered the plea because I didn't really know what I was doing. Because I'm not going to do that.

[JOHNSON]: Yes.

THE COURT: If you are giving me what I want to hear, then we're going to stop the hearing. Because I'm not going to play the game. And we're not going to go through the process. And we can just go to trial.

[JOHNSON]: Yes, sir.

THE COURT: If that is something that you want, we have a trial date set for you.

[JOHNSON]: No, sir. I want to stick with going with my attorney and what we agreed upon.

THE COURT: Are you sure?

[JOHNSON]:   Yes sir.

Plea Tr. 21-22.

{¶ 18} After granting Johnson additional time to consult with his attorney, defense counsel indicated that Johnson was anxious but that he wished to proceed with the plea. Johnson acknowledged that part of the anxiety he had was the amount of prison time he was facing for the offenses.   This, however, did not reflect that Johnson was incompetent, but rather that he understood the severity of entering a guilty plea to felony sex offenses that required mandatory prison time.   The Supreme Court of Ohio "has made clear that '[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity.' "   *State v. Williams,* 2023-Ohio-965, ¶ 23 (2d Dist.), quoting *Bock*, 28 Ohio St.3d at 110.   This is because " '[a] defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel.' "   *Id.*, quoting *Bock* at 110.

{¶ 19} Additionally, defense counsel, a seasoned attorney with over 21 years of experience, stated that Johnson had no difficulties discussing the case and, although Johnson was emotional about the situation, he was capable of understanding the proceedings against him.   Counsel stated that Johnson was able to assist in his defense, she did not see any indication that Johnson's medications were affecting his reasoning ability or judgment, and Johnson had sufficient and present ability to consult with her to a reasonable degree of rational and factual understanding of the proceedings against him.

{¶ 20} After a careful review, we conclude that the record does not contain sufficient indicia of incompetence to hold that the trial court denied Johnson due process

when it did not sua sponte order a competency evaluation. The statements made at the time of the plea hearing demonstrated that Johnson had a clear understanding of the nature of the proceedings against him and that he had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. Despite the fact that Johnson appears to have made a suicide attempt, he clearly expressed his ability to understand the nature of the proceedings and his desire to proceed with entering his guilty pleas. Nothing in the record demonstrates that Johnson struggled to understand what was occurring at the plea hearing so as to put the trial court on notice that a competency evaluation was warranted. Nor does the record reflect anything out of the ordinary in Johnson's behavior and demeanor while in the courtroom. The trial court was aware of the medications Johnson was taking and the medications Johnson claimed he should have been given prior to accepting his pleas. With that knowledge, the trial court adequately inquired into Johnson's ability to understand the nature of the proceedings and his decision-making abilities. The trial court was able to observe Johnson throughout the course of these proceedings and determined that he was competent to enter his guilty pleas knowingly, intelligently, and voluntarily. Accordingly, Johnson's first assignment of error is overruled.

### III. Sufficiency of the Evidence

{¶ 21} In his second and third assignments of error, Johnson contends that the State did not prove sufficient facts for the court to find him guilty of illegal use of minor or impaired person in nudity-oriented material or performance (Count 6) or pandering sexually-oriented matter involving a minor or impaired person (Count 7). Johnson further

argues that the definition of nudity was unconstitutionally overly broad as applied to his situation and that R.C. 2907.322(A)(1) "as applied to the images is overly broad."

**{¶ 22}** Having determined that Johnson's pleas were knowingly, intelligently, and voluntarily made, we need not reach the merits of these assignments of error; Johnson's pleas of guilty operate as a waiver of the claimed errors.   A guilty plea is a complete admission of guilt.   Crim.R. 11(B)(1).   "By entering a guilty plea, a defendant waives his right to present manifest-weight-of-the-evidence or sufficiency-of-the-evidence attacks against his convictions."   *State v. Dalton*, 2012-Ohio-3386, ¶ 7 (2d Dist.), citing *State v. Griggs*, 2004-Ohio-4415.   "A guilty plea 'provides the necessary proof of the elements of the crime and sufficient evidence to support the conviction.' "   *State v. Withrow*, 2016-Ohio-2884, ¶ 47 (2d Dist.), quoting *State v. Isbell*, 2004-Ohio-2300, ¶ 16 (12th Dist.). Consequently, by pleading guilty, Johnson admitted that he had committed the offenses as charged in Counts 6 and 7, and his admissions cannot be challenged on appeal.

**{¶ 23}** Furthermore, Johnson's constitutional challenge was not raised in the trial court and is forfeited on appeal for all but plain error.   "[T]he question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court."   *State v. Awan*, 22 Ohio St.3d 120, 122 (1986).   "The failure to challenge the constitutionality of a statute in the trial court forfeits all but plain error on appeal, and the burden of demonstrating plain error is on the party asserting it."   *State v. Quarterman*, 2014-Ohio-4034, ¶ 2.   Johnson makes a bare assertion that the statutes under which he was charged are unconstitutional.   He has made no attempt to argue plain-error on appeal, and we decline to make an argument for

him.

**{¶ 24}** Accordingly, Johnson's second and third assignments of error are overruled.

## IV. Sentencing

**{¶ 25}** In his final assignment of error, Johnson claims that his sentence was disproportionate to his crimes and argues that he should have received minimum sentences for his offenses, which should have been imposed concurrently. We do not agree.

**{¶ 26}** In reviewing felony sentences, this court must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 7. Under that statute, we may increase, reduce, or modify a sentence, or we may vacate the sentence and remand for resentencing, only if we "clearly and convincingly" find either (1) that the record does not support certain specified findings, including those under R.C. 2929.14(C)(4), or (2) that the sentence imposed is contrary to law. *State v. Wells*, 2024-Ohio-4813, ¶ 45 (2d Dist.), citing *Marcum* at ¶ 9, and R.C. 2953.08(G)(2). Clear and convincing evidence is that " 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶ 27}** "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, 2020-Ohio-6729, ¶ 42. "When reviewing felony sentences that are

imposed solely after considering the factors in R.C. 2929.11 and R.C. 2929.12, we do not analyze whether those sentences are unsupported by the record." (Citations omitted.) *State v. McDaniel*, 2021-Ohio-1519, ¶ 11 (2d Dist.). "The inquiry is simply whether the sentence is contrary to law." *State v. Bartley*, 2023-Ohio-2325, ¶ 9 (2d Dist.). "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." (Citation omitted.) *State v. Brown*, 2017-Ohio-8416, ¶ 74 (2d Dist.).

{¶ 28} Generally, where a defendant is ordered to serve a term of imprisonment, there is a presumption that the sentence shall be served concurrently with any other prison term imposed upon the offender. R.C. 2929.41(A). R.C. 2929.14(C) provides an exception to allow consecutive sentences. Under that statute, a trial court must make certain consecutive sentence findings at the sentencing hearing before imposing consecutive sentences and must incorporate those findings into its sentencing entry. *State v. Bonnell*, 2014-Ohio-3177, syllabus. Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one or more of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. R.C. 2929.14(C)(4); *State v. Hill*, 2024-Ohio-3330, ¶ 7 (2d Dist.). Relevant here, those factors include:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the

Revised Code, or was under post-release control for a prior offense.

. . .

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a) and (c).

**{¶ 29}** "The plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-Ohio-3851, ¶ 5.

**{¶ 30}** To the extent Johnson argues that the evidence was insufficient to support his convictions and, therefore, he should have received the minimum sentences, we reject this contention. As explained above, Johnson's guilty pleas constituted a complete admission of guilt. The trial court was free to sentence Johnson within the applicable sentencing ranges and was not required to sentence Johnson to a minimum or concurrent sentence. "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, ¶ 45 (2d Dist.).

**{¶ 31}** The trial court ordered the sentences for Counts 6 and 7 to be served concurrently to each other but consecutive to Count 2 and to the additional 730-day prison sentence for committing a felony while on post-release control. Pursuant to R.C.

2929.141(A)(1), the trial court was required to order the additional 730 days in prison to be served consecutively to any prison term imposed for the new felonies. As a result, the findings set forth in R.C. 2929.14(C)(4) were not required to make that particular 730-day sentence consecutive rather than concurrent. However, the findings in R.C. 2929.14(C)(4) were required to order the sentences for Counts 6 and 7 to be served consecutively to Count 2. Therefore, we will focus our review on the trial court's decision relating to these counts.

{¶ 32} The trial court made the appropriate consecutive sentence findings under R.C. 2929.14(C), both at the time of sentencing and in the judgment entry. The court found that consecutive sentences were "necessary to protect the public from future crime or to punish the Defendant." Sentencing Tr. 46. The court further found that consecutive sentences were "not disproportionate to the seriousness of the conduct and danger that the Defendant poses to the public." *Id.* Finally, the trial court found that both R.C. 2929.14(C)(4)(a) and 2929.14(C)(4)(c) applied. The trial court noted Johnson's extensive criminal history, for which he had served several prison terms, including prison terms for multiple violent felony offenses, and that at the time he committed the underlying offenses, Johnson was serving a term of post-release control for a prior felony conviction.

{¶ 33} The PSI supported the trial court's findings and reflected that Johnson had been in and out of prison since his first felony conviction for aggravated robbery in 1981. At the time of the underlying offenses, Johnson was serving a term of post-release control for a felony conviction out of Champaign County Common Pleas Court. Accordingly, the

trial court's imposition of consecutive sentences was not clearly and convincingly unsupported by the record.

{¶ 34} Johnson's sentence was also not contrary to law. Johnson does not assert that any of his sentences were outside the applicable statutory, ranges and the record reflects that the trial court complied with its obligations under R.C. 2929.11 and 2929.12. The trial court stated at the time of sentencing that it had reviewed the PSI report, statements of counsel, Johnson's statements, and the exhibits submitted by both the State and Johnson during the sentencing hearing. The court advised that it had considered the purposes and principles of sentencing under R.C. 2929.11 and evaluated the seriousness and recidivism factors set forth in R.C. 2929.12. Sentencing Tr. 33. The court's findings were included in the judgment entry.

{¶ 35} R.C. 2929.13(F)(6) requires a mandatory prison term for any offense that is a first- or second-degree felony when the defendant has a prior conviction for a first- or second-degree felony. Here, both Counts 6 and 7, being second-degree felony offenses, required the trial court to impose a mandatory prison sentence on each offense pursuant to R.C. 2929.13(F)(6) due to Johnson's prior criminal history. Although the trial court was not required to impose a prison sentence on Count 2, the trial court had discretion to impose any sentence within the authorized statutory range.

{¶ 36} Johnson argues that the trial court improperly "tied the marijuana charge into the two pornography charges and potential sex crimes," which Johnson states was an "improper basis for sentencing," and that he should have received either the minimum sentence or community control for Count 2. Appellant's brief, p. 23. Although Johnson

does not mention any case law in support of his argument, presumably he is relying on *State v. Bryant*, 2022-Ohio-1878, which held that "when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law." *Id.* at ¶ 22.

{¶ 37} Johnson was convicted in Count 2 of trafficking in marijuana. The underlying facts of the case reflect that Johnson sold marijuana to juveniles and allowed them to smoke marijuana in his apartment. Johnson was convicted in Count 6 of illegal use of a minor or impaired person in nudity-oriented material or performance and in Count 7 of pandering sexually-oriented matter involving a minor or impaired person. Counts 6 and 7 stemmed from various child pornography that Johnson downloaded onto his cell phone. The PSI reflected that Johnson had previously been convicted of sexual imposition in addition to numerous other misdemeanor and felony offenses. Johnson had a high ORAS score, indicating a very high likelihood of recidivism, and a history of illegal drug use.

{¶ 38} In reviewing the court's statements about which Johnson complains, we conclude that the court was merely emphasizing the seriousness of the offenses. The documents submitted at the time of sentencing reflect that Johnson admitted to law enforcement that he had learned how to view the child pornography on his cell phone from a 15-year-old juvenile. State's Ex. 4. Johnson further admitted that he had a problem with looking up child pornography and needed help. In his own statement to the court, Johnson admitted that his drug and alcohol problems made him unpredictable, which was what caused him to commit his prior felony offenses. Def. Ex. A; Sentencing

Tr. 19-20. The court noted that Johnson had downloaded child pornography onto his cell phone while he had juveniles at his home to smoke marijuana, which was a recipe for disaster. The trial court's statements were based on the facts of the case, the charges for which Johnson was convicted, and the public policy reasons why Johnson's offenses were so serious. Reviewed in context, the trial court did not impose a sentence based on factors or considerations that were extraneous to those that are permitted by R.C. 2929.11 and 2929.12.

{¶ 39} On this record, we cannot conclude that the trial court's consecutive sentence findings were clearly and convincingly not supported by the record or that his sentence is otherwise contrary to law. Johnson's fourth assignment of error is overruled.

## V. Conclusion

{¶ 40} Having overruled all of Johnson's assignments of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.